UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
UNITED STATES OF AMERICA,

       - against -

MICHAEL GREEN,

                  Defendant.
------------------------------------------X

6/15/05

04 Cr. 424-13 (RWS)

SENTENCING OPINION

**Sweet, D.J.,**

On April 29, 2005, Defendant Michael Green ("Green") appeared before the Honorable Douglas F. Eaton of this district and allocuted to the conduct charged in the sole count of the indictment, conspiracy in violation of 21 U.S.C. § 846 to distribute and possess with intent to distribute one kilogram and more of heroin, in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(A). Green's plea was accepted on May 26, 2005. Green will be sentenced to 48 months imprisonment and five years supervised release. A special assessment fee of $100 is mandatory and is due immediately.

**Prior Proceedings**

On May 6, 2004, the government filed a sealed indictment against Green and his co-defendants, charging them with a single count of violating 21 U.S.C. § 846, conspiracy to distribute and

1



possess with intent to distribute one kilogram and more of heroin. The indictment was unsealed on May 11, 2004, and an arrest warrant for Green was issued on the same day. Green was arrested on May 11, 2004, and he has remained in custody since that time. Green entered a guilty plea on April 29, 2005, which this Court accepted on May 26, 2005, and currently Green is scheduled for sentencing on June 13, 2005.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), and the Second Circuit's decision in <u>United States v. Crosby</u>, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Sentencing Guidelines (the "Guidelines") established by the United States Sentencing Commission. Thus, the sentence to be imposed here is the result of a consideration of:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed --

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

2

        (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for --

        (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ;

(5) any pertinent policy statement . . . [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

**The Defendant**

The Court adopts the facts set forth in the Probation Department's Pre-sentence Report with respect to Green's family history and personal history.

## The Offense Conduct

The indictment filed in this action charges that from at least 1999 through May 2004, Green, along with his nineteen co-defendants and others, were members of a criminal organization in the Bronx that controlled a three-block strip of Daly Avenue between East 179th Street and Bronx Park South (the "Daly Avenue Organization" or the "Organization"). According to the indictment, the Organization sold heroin all day and late into the night during the period identified in the indictment, conducting tens of thousands of hand-to-hand heroin transactions. The Organization operated out of several buildings, including 2105 Daly Avenue and 2114 Daly Avenue.

Green was a "worker" or "pitcher" for the Organization. Workers or pitchers for the Organization would be provided heroin on consignment by managers in the Organization, and would then sell the heroin to customers, paying the managers for the heroin as they were able to sell it. Workers and pitchers also acted as "steerers," directing customers on Daly Avenue to other workers or to managers to complete sales of heroin. According to the indictment, eleven of Hernandez's co-defendants also acted as workers or pitchers.

Based on trial testimony before the Court, the Organization sold an average of twenty-five bundles of heroin a

4

day, which amounts to approximately half of a kilogram per month, although the actual amount could vary from month to month.[1] With respect to Green specifically, the Court estimates that he should be held accountable for conspiring to distribute between 1 and 3 kilograms of heroin during his five month involvement (from December 2003 through May 2004)[2] with the conspiracy.

---

[1] Although the government asserts that the Organization sold "as much as fifty bundles of heroin a day," which is the equivalent of 500 glassines of heroin a day, the Court finds an average daily distribution of twenty-five bundles. The trial testimony of one cooperating witness, who is a former member of the Organization, reveals that the sale of forty to fifty bundles was the "biggest number of bundles [the witness could] <u>ever</u> remember selling in one day." (Trial Trans. p. 137) (emphasis added). That same witness a few moments later then said, in response to further questioning by the government, that "the most bundles is like probably eighty to a hundred." (Tr. Trans. p. 137).

However, a different cooperating witness testified on direct examination that "on an average day" he would be able to sell "anywhere from a couple of bundles, like two bundles, three bundles, all the way up to thirty bundles." (Tr. Trans. p. 387). On a slow day he would sell "anywhere from five bundles or less," and on a "really busy day, anywhere like up to eighty bundles." (Tr. Trans. p. 388). But, he then testified that this latter number was not based on his own experience -- but rather gleaned "from talk because you just like hear the guys either complaining about how little drug money they made or they could be <u>boasting</u> about how much drugs they sold that day." (Tr. Trans. p. 388) (emphasis added).

The Organization operated in three shifts, with two people -- a manager and a pitcher -- working each shift. The pitcher conducted most of the sales, while the manager may have sold if the opportunity arose. (Tr. Trans. p. 135). The Court considered both the structure of the Organization and the testimony presented regarding sales when determining the average daily distribution of heroin to attribute to the conspiracy.

[2] When entering his guilty plea, Green allocuted to participating in the conspiracy from December 2003 through

5

Green was arrested on May 11, 2004.

**The Relevant Statutory Provisions**

The statutory minimum term of imprisonment for the sole count of the indictment is ten years and the maximum term is life, pursuant to 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. The applicability of the statutory minimum sentence may be limited in certain cases pursuant to 18 U.S.C. §§ 3553(f)(1)-(5).

If a term of imprisonment is imposed, the Court subsequently shall impose a term of supervised release of at least five years pursuant to 21 U.S.C. § 841(b)(1)(A).

Green is not eligible for probation because the instant offense is one for which probation has been expressly precluded by statute, pursuant to 18 U.S.C. § 3561(a)(2) and 21 U.S.C. § 841(b)(1)(A).

The statutory maximum fine is $4 million, pursuant to 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. A special assessment of $100 is required. See 18 U.S.C. § 3013.

---

May 11, 2004, the date of his instant arrest.

Green may be declared ineligible for any or all Federal benefits for up to five years as determined by the Court pursuant to 21 U.S.C. § 862(a)(1)(A). Federal benefit is defined to mean "'any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States' but 'does not include any retirement, welfare, Social Security, health, disability, veterans benefit, public housing, or other similar benefit, or any other benefit for which payments or services are required for eligibility.'" See 21 U.S.C. § 862(d).

Pursuant to the Violent Crime Control and Law Enforcement Act of 1994, all offenders on probation, parole or supervised release for offenses committed after September 13, 1994, are required to submit to one drug test within fifteen days of commencement of probation, parole or supervised release and at least two drug tests thereafter for use of a controlled substance, unless ameliorated or suspended by the court due to its determination that the defendant poses a low risk of future substance abuse as provided in 18 U.S.C. §§ 3563(a)(5) and 3583(d).

**The Guidelines**

The November 1, 2004 edition of the United States Sentencing Commission, Guidelines Manual ("U.S.S.G.") has been used

in this case for calculation purposes, in accordance with U.S.S.G. § 1B1.11(b)(1).

The guideline for a violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846 is found in U.S.S.G. § 2D1.1(a)(2), which specifies that the base offense level is set in accordance with the Drug Quantity Table under U.S.S.G. § 2D1.1(c)(2). At his allocution, Green indicated that he knowingly conspired with others to possess, with intent to distribute, heroin. The Court finds that the amount for which Green should be held accountable is between 1 and 3 kilograms of heroin. In light of this latter amount, and pursuant to the Drug Quantity Table, the base offense level is 32.

Green is eligible for the two level reduction under the safety valve provision. See U.S.S.G. §§ 5C1.2(a)(1)-(5).

Based on Green's plea allocution, he has accepted responsibility for the instant offense. Furthermore, since he offered timely notice of his intention to plead guilty, thus allowing the government to allocate its resources more efficiently, the offense level is reduced three levels, pursuant to U.S.S.G. §§ 3E1.1(a), (b).

## Disputed Adjustment

Green argues that he is entitled to a reduction in the adjusted offense level by virtue of his minor role in the Organization, pursuant to U.S.S.G. § 3B1.2(b). Specifically, Green contends that he was merely a drug addict at the bottom rung of the conspiracy and nothing more than a worker or pitcher. The government argues that Green is not entitled to a minor-role adjustment, as such adjustments are only appropriate where a defender is "substantially less culpable than the average participant." U.S.S.G. § 3B1.2 comment. n.3(A).

A defendant has the burden of proving by a preponderance of the evidence that he is entitled to a minor-role adjustment under § 3B1.2. See United States v. Yu, 285 F.3d 192, 200 (2d Cir. 2002); United States v. Castano, 234 F.3d 111, 113 (2d Cir. 2000); United States v. Colon, 220 F.3d 48, 51 (2d Cir. 2000). As the Second Circuit has explained, a minor-role reduction "will not be available simply because the defendant played a lesser role than his co-conspirators; to be eligible for a reduction, the defendant's conduct must be `minor' . . . as compared to the average participant in such a crime." United States v. Carpenter, 252 F.3d 230, 234 (2d Cir. 2001) (quoting United States v. Rahman, 189 F.3d 88, 159 (2d Cir. 1999)); accord Yu, 285 F.3d at 200. The district court's analysis of the defendant's role in criminal activity is, accordingly, "highly fact-specific and depends on the

9

nature of the defendant's relationship to the other participants, the importance of the defendant's actions to the success of the venture, and the defendant's awareness of the nature and scope of the criminal enterprise." Carpenter, 252 F.3d at 234 (quoting United States v. Shonubi, 998 F.2d 84, 90 (2d Cir. 1993).

Green has not established facts demonstrating that he was "substantially less culpable" than most of his co-defendants. Indeed, the majority of the participants in the Organization are charged with serving the same function as Green, i.e., acting as a worker or pitcher and also as a steerer. As the Second Circuit explained in United States v. Colon, 884 F.2d 1550 (2d Cir. 1989), even steerers, who handle neither drugs nor money, "play an important role in the street-level drug transactions . . . ." Colon, 884 F.2d at 1552 (concluding that the defendant was not eligible for a minimal-role adjustment). At his allocution, Green specifically admitted to distributing heroin during the length of his involvement with the conspiracy, thus acknowledging that he acted as more than a simple steerer. In light of the foregoing, Green has not demonstrated that he qualifies for a minor-role reduction of his offense level.

## Remaining Calculations

The adjusted offense level resulting from the foregoing calculations and discussion is 27.

Based on the offense level of 27 and a Criminal History Category of I, the guideline range for imprisonment is 70 to 87 months.

The authorized term for supervised release under the guidelines is five years, pursuant to U.S.S.G. § 5D1.2(b).

Green is not eligible for probation because the applicable guideline range is in Zone D of the Sentencing Table, pursuant to U.S.S.G. § 5B1.1(b)(2), comment. n.2.

The fine range for the instant offense under the guidelines is from $17,500 to $4 million, pursuant to U.S.S.G. §§ 5E1.2(c)(3)(A) and 5E1.2(c)(4).

Subject to Green's ability to pay, the expected costs to the government of any imprisonment, probation, or supervised release shall be considered in imposing a fine, pursuant to U.S.S.G. § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $1,931.97 to be used for imprisonment, a monthly cost of $292.21 for supervision, and a monthly cost of $1,590.66 for community confinement.

A special assessment of $100 is mandatory, pursuant to 18 U.S.C. § 3013.

Pursuant to U.S.S.G. § 5F1.6, eligibility for certain federal benefits may be denied to any defendant convicted of distribution or possession of a controlled substance.

**The Remaining Factors of 18 U.S.C. § 3553(a)**

Having engaged in the Guideline analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) in order to impose a sentence "sufficient, but not greater than necessary" as is required in accordance with the Supreme Court's decision in United States v. Booker, 125 S.Ct. 738 (2005) and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2nd Cir. 2005). In particular, section 3553(a)(1) asks that the sentence imposed consider both "the nature and circumstances of the offense and the history and characteristics of the defendant," while section 3553(a)(2)(A) demands that the penalty "provide just punishment for the offense" that simultaneously "afford[s] adequate deterrence to criminal conduct" as required by § 3553(a)(2)(B).

Green witnessed horrific violence in his home as a child and young man. Starting at age nine, Green watched his stepfather severely and routinely beat his mother, often using hammers and golf clubs in addition to his own fists. His mother was burned with cigarettes in front of her children; she was thrown from a second story balcony during an argument. Green's mother began to

12

neglect her own children and was instructed by her abusive husband to send Green and his siblings into foster care.

At age ten, his mother complied and Green was sent into foster care. His grandmother gained custody of him shortly thereafter, and Green moved to New York City. He attended school regularly and became an active member in his community's church, as the pastor of that church confirmed for the Court. His life gained stability and Green thrived in his new environment.

Two years later, Green's mother regained custody of her children, and Green, along with his siblings, were returned to his mother's home in North Carolina, where the abuse continued. His mother suffered a nervous breakdown in the following months, and Green reentered the foster care system, where he remained until he graduated from high school in 2002.

He traveled back to New York City in 2003 for his grandmother's funeral and was convinced to stay in the Bronx by a cousin. Six months elapsed and Green, having developed an addiction to marijuana, alcohol, and ecstasy, began selling drugs with the Daly Avenue Organization to support his drug habit. He participated in the conspiracy for five months before his arrest.

Today, Green is twenty years old. He has reconnected with his spiritual faith while in prison over the past year,

involving himself in regular religious meetings and leading discussion groups with fellow inmates. He has reached out to his former church in New York City, and has identified a support network, in particular a program tailored to the needs of formerly incarcerated individuals, to assist him upon his release from prison. Having graduated from high school, he strives to attend college in the future. While in custody, he will seek substance abuse treatment.

Green has one misdemeanor larceny conviction in the state court of North Carolina. The details of this conviction have not been made available to the Court, but Green received a sentence of time served, which, by then, totaled eleven days in jail. The prison time currently facing Green is more than 100 times greater than any punishment he has served previously; imposing such a sentence on this twenty-year old man achieves both the "just punishment" and "adequate deterrence" sought under 18 U.S.C. §§ 3553(a)(2)(A),(B).

Finally, in considering the remaining sentencing factors under 18 U.S.C. § 3553(a), the Court must take into account "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(6). Since <u>Booker</u>, a growing number of courts have "held that sentencing judges are 'no longer prohibited from considering the disparity between co-

defendants in fashioning a reasonable sentence.'" Ferrara v. United States, -- F.3d --, 2005 WL 1205758, at *11 (D. Mass. May 13, 2005) (quoting United States v. Hensley, No. 2:04 CR 10081, 2005 WL 705241, at *2 (W.D. Va. Mar. 29, 2005)); see also United States v. McGee, -- F.3d --, 2005 WL 1324815, at *17 (7th Cir. June 3, 2005); Simon v. U.S., 361 F. Supp. 2d 35, 49 (E.D.N.Y. 2005).[3]

The majority of Green's co-defendants are pitchers or workers within the Organization, many of whom also have no prior criminal convictions. These co-defendants have benefitted from the "safety valve" provision and, like Green, are not subject to

---

[3] It should be noted that in an unpublished summary order that was entered after Booker and Crosby were announced, the Second Circuit reaffirmed the construction of section 3553(a)(6) announced in United States v. Joyner, 924 F.2d 454, 460 (2d Cir. 1991) (stating that "[t]o reduce the sentence by a departure because the judge believes that the applicable range punishes the defendant too severely compared to a co-defendant creates a new and entirely unwarranted disparity between the defendant's sentence and that of all similarly situated defendants throughout the country"). See United States v. Toohey, 2005 WL 1220361, at *2 (2d Cir. May 23, 2005). The Toohey court stated:

> [Even after Booker,] Joyner's construction of the role the Guidelines play in [the] § 3553(a)(6) consideration remains the same. See United States v. Booker, 125 S.Ct. at 761, 767 (emphasizing the continued importance of the Guidelines to avoiding unwarranted sentencing disparities). Thus, a sentencing court does not reasonably satisfy its statutory obligation under § 3553(a)(6) when it only compares discrete cases or defendants. Rather, to identify a reasonable sentence, § 3553(a)(6) expects a court to consider whether a defendant is favored or disfavored by a particular sentence "compared to all those similarly situated defendants." United States v. Joyner, 924 F.2d at 461.

Id.

15

the statutory minimum mandatory 120 months incarceration. All of Green's co-defendants have suffered tragic upbringings, receiving little stability and support during their childhoods, and developing addictions to controlled substances at an early age. Green, unlike most of his co-defendants and much to his credit, did graduate from high school, despite the gravely destabilizing circumstances of being shuffled between foster homes and his mother's abusive home during his teenage years.

All of Green's similarly situated co-defendants were involved in the conspiracy for a greater length of time than Green, and, as such, are held accountable for distributing a greater amount of heroin over the duration of their involvement. These co-defendants are sentenced to 60 months incarceration followed by five years of supervised release. The Court takes note of these sentences imposed on Green's similarly situated co-defendants in an effort to be aware of the "just punishment" afforded other co-defendants and thereby "avoid unwarranted sentence disparities" in accordance with 18 U.S.C. § 3553(a)(6).

**The Sentence**

For the instant offense, Green is sentenced to 48 months imprisonment and five years supervised release. As Green has been detained without bail since his arrest, he is not a candidate for voluntary surrender pursuant to 18 U.S.C. § 3143(a)(2).

16

A special assessment fee of $100 payable to the United States is mandatory and due immediately. Because Green lacks financial resources and in consideration of the factors listed in 18 U.S.C. § 3572, no fine is imposed.

As mandatory conditions of supervised release, Green shall (1) abide by the standard conditions of supervision (1-13); (2) not commit another federal, state, or local crime; (3) not illegally possess a controlled substance; and (4) not possess a firearm or destructive device.

The mandatory drug testing condition is suspended due to imposition of a special condition requiring drug treatment and testing.

Green shall participate in a program approved by the United States Probation Office, which program may include testing to determine whether he has reverted to using drugs or alcohol. The release of available drug testing evaluations and reports to the substance abuse treatment provider, as approved by the Probation Officer, is hereby authorized. Green is required to contribute to the costs of services rendered (co-payment), in an amount determined by the Probation Officer, based on ability to pay or availability of third-party payment.

Green shall report to the nearest Probation Office within

72 hours of release from custody and shall be supervised by the district of residence.

This sentence is subject to modification at the sentencing hearing now set for June 13, 2005.

It is so ordered.

New York, NY
June  /3 , 2005

ROBERT W. SWEET
U.S.D.J.